All right, our second case for this morning is DeCoster v. Waushara County Highway Dept. Mr. DeLosto? Too many papers, Your Honor. You probably won't look at them anyway. I know, you know. Good morning. I may have pleased the Court. Ray DeLosto appears on behalf of the appellant, Ronald DeCoster. And, Your Honors, we're here today to ask this Court to reverse the grant of summary judgment by the District Court, which we believe was erroneous on a number of grounds, which are set out in the brief. We do agree with the District Court that this is the first time this circuit, the Seventh Circuit, has considered and addressed whether the Uniform Act, and I'm going to pronounce it. It's really long. We'll just call it the Uniform Act or the URA. The Uniform Relocation Assistance, Acquisition, and Real Property Policies Act of 1970, which is at 42 U.S. Code 4601. Whether this Court has not addressed whether the URA gives rise to a private right of action to enforce provisions of it, particularly one provision, which is 4654C, which mandates that a party, a property owner, who succeeds, whether in a condemnation or inverse condemnation matter, whether it's gone to trial and a contested hearing or settled, has a right, shall be awarded their reasonable costs, attorney's fees, which were actually expended. So, I have to tell you, Mr. DeLosto, the thing that baffles me about this, or one of the things, about this appeal is why we even have any reason to reach that issue. This matter was fully litigated in the state courts. Wisconsin, like most states, recognizes claim preclusion, and it uses a transactional approach to what amounts to a claim, and so anything that either was raised or could have been raised in the state court is now decided. The federal court, under Section 1738, has to give the same full faith and credit to the state decision that the state would. And this whole question, whether the URA creates a private right of action, if so, is it congruent with the state statute, or is it more, or what have you, you can think of a lot of issues. But I don't see anything to indicate that the state court in Wisconsin wouldn't have been fully empowered to decide those issues. Your Honor, it was empowered, and would have been, if someone would have brought it to its attention. You had to raise it. It was never dealt with, Your Honor. It's not only those things before the court, but those things that could have been included. You can't litigate in state court on Theory 1, arising out of a transaction, and then come over to a different state court or a federal court, and litigate the same transaction on the basis of Theory 2. Your Honor, both... That's just first-year law school. That's claim preclusion. Well, yes, Your Honor, if the claims are the same and if they are precluded. But the fact that different statutes underlie them is not enough under the regime that Wisconsin follows to make them different claims. I understand that you have this Wisconsin statute 32.28, and you also, you are asserting there's somehow a supplemental right under the URA, but that doesn't make them different claims. Well, Your Honor, the supplemental right, if it's never, first of all, if a property owner is never notified, as Mr. DeCoster was not, that it exists. You don't have to notify somebody about their legal rights to be covered by the rule of claim preclusion. But, Your Honor... Unless you've got some very unusual Wisconsin law that I'm not acquainted with. No, but under the URA, if there is federal funding, the Wisconsin Department of Transportation has agreed. It's a different legal theory than the one raised in state court. But I share my colleague's concern that the rule of claim preclusion is that all legal theories must be raised in the initial case, and Wisconsin follows that rule. Yes, sir. Wisconsin also follows the rule of issue preclusion. And one issue decided in the Wisconsin case, actually decided, was whether legal expenses greater than $31,000 were reasonable. And the state court held not. Well, the federal statute, even if there's a private right of action, limits recovery to reasonable expenses. So why is this claim not also barred by issue preclusion? Your Honor, the URA, as far as legal fees goes, talks about, in the congressional history, talks about making the property owner whole, and the language of 4654... That's all fine. The language of the federal statute talks about reasonable expenses. Yes, sir. And the state court held that expenses in excess of $31,000 were not reasonable. My question is why that is not covered by Wisconsin's doctrine of issue preclusion. Because the state judge dealt with only the issue of award of attorney fees under the state law. No, you don't understand what issue preclusion is. You're just not understanding the question. Go ahead. Right, issue preclusion. Same parties, same issue, necessarily decided and actually litigated in the first case. The parties are the same. It's the decosters and the county. The issue is the reasonableness of the fees that the decosters incurred as this litigation proceeded. Under the state law, reasonableness is an issue.  It's the same issue. And the state court decided, for purposes of the state law, that $31,000 and some dollars was the reasonable amount that could be awarded under this statute. Typical issue preclusion means that that issue, we don't even have non-reciprocal situation here. We have both parties involved in both cases, and that finding of fact is now binding as between those two parties in current litigation. Your Honor, I would disagree in the sense that the URA is an overlay of rights, which says that a property owner can be reimbursed for the actual expenditure made. At the actual reasonable expenditure. Correct. The URA is not a guarantee that every penny you spend, whether wisely or foolishly, is going to be reimbursed. Agreed. The state court has a duty to assess, as in all attorneys' fees litigation, ordinary attorneys' fees litigation, computing the load star, the court's going to look and see, is the fee charged a reasonable fee? It might take evidence on that. That didn't seem to be a problem here, reading the state court's opinion. But the other thing the state court, or any court, would look at here is, did you spend a reasonable amount of time on this? And there the state court was very firmly of the view that the full amount of time was not reasonable. So it caps it, I'm sure you know the case, as of a certain date. And it turns out that that's a pretty generous fee, actually, for the amount of money that wound up changing hands. Well, Your Honor, the case, and I was not in the underlying case in the trial court, although my opposing counsel was and has more familiarity. I came in after to get the paddles to start the heart here on the issue of attorney fee awards. But I would respectfully disagree that the claim preclusion precludes the consideration or application of the URA, which is to make whole. And the Wisconsin Statute 3228 includes language that you can have additional payments. The issue of additional payments was never to make them whole, and consideration of the load star and why we're going to cut the fees by three quarters, none of that was ever addressed under the standards of the URA. It simply wasn't before the trial court. And I found no reason in my review of the records and proceedings. I think you were reviewing these Wisconsin statutes, plus the URA, too much, and not the principles of claim and issue preclusion enough. Because they do exist precisely for this sort of situation, so that people don't shave up their grievances with others and busy quite a few courts with functionally the same case. That's why I stress that Wisconsin, at least as far as I understand it, follows what we call the transactional approach. You can go back in the history of claim preclusion, and you can see that sometimes people look to see if the same facts were going to exist in both cases. Sometimes people looked at theories, but that's not what Wisconsin does. Wisconsin has followed the modern trend, which is the transactional approach. Well, Your Honor, I would, again, still maintaining my position, this is much akin, and I do a lot of employment law for both sides as well. There is no release, there is no going forward. This settlement that we've reached covers any and all claims or waiver under the URA. URA is not mentioned, wasn't considered by the state court. It would be like if you had an Age Discrimination Act potential claim, but you settled the case but didn't include that statute or some others in the release. You haven't given up those claims under it, and those claims, we believe, still exist, despite the fact that the state court dealt only with the award of attorney fees, only under state law, and didn't consider at all the impact of the URA. And I'll reserve the remainder for my... Thank you. All right, sure. Mr. Bruce. Thank you. May it please the court. My name's John Bruce. I'm with the firm of Shoburn & Shoburn & Mitchell in New Berlin, Wisconsin. I represent the appellees. I'd like to refer to them collectively as the county. I feel the court very appropriately asked the questions asked of counsel for Mr. DeCoster. I do think I should point out that it's my understanding, based on your cases that this court has in the past, ruled that there is no private cause of action arising under what I'll call the Uniform Act, and I referred to two or three cases in my briefs where it appeared to do that. I just don't think this court has specifically addressed whether Section 1983 provides a remedy. I don't think it can if there is no private cause of action. But I just wanted to explain to the court that I differ with counsel for Mr. DeCoster in that respect. I think it's important to understand here that Wisconsin statutes specifically state that Wisconsin courts, Wisconsin agencies are required to look to the Uniform Act and that payments should be made to the extent necessary if they're not satisfied by the normal provisions of Wisconsin condemnation law. That's Section 32.19 of the Wisconsin statutes, subsection 3D. I cannot accept the position taken by the plaintiff here that his client should have been and wrongfully was not advised of the fact that he might have been able to make a claim under the Uniform Act. I know of no obligation my client had to advise him of that fact. My client has always... So you're not aware of any jurisdictional limitation the Wisconsin court would have suffered under if somebody had added, you know, count five claim under the URA? No, I think it would have been perfectly possible for that claim to be brought, given the statute I've referred to. It was not brought. Mr. DeCoster never claimed he was a displaced person or any kind of relocation benefits of any nature, all of which are provided. Does he get these, I mean, they talk about 5,000 square feet and then I saw 1,200 feet times two feet, which didn't multiply out to 5,000 in my view. It's old fashioned. Does he get a little strip on both sides of the road or is it just one side of the road? No, no, just one side. Just one side. The county took the position that the fence, which was adjusted, encroached on the right-of-way of the highway. What kind of fence was this? It was an old... I have to say, unfortunately, the exhibits in the grease were not very helpful. It was an old farm fence. It was a barbed wire fence, wasn't it? I don't know if it was fully barbed wire or not. But it wasn't like a brick wall or anything. Oh, no, no, no. It was a fence. It was a straight farm type fence. Yeah, I believe he pastured cattle in that area. Mr. DeLostro may know that better, but that was my understanding. It extended about 300 feet. It had been there approximately 30 years, as I think is undisputed. So he could have left it there if he'd given them this revocable use permit. He could have. Or he could have moved it four feet or some rather small distance away from the right-of-way that the county asserts was its right-of-way, and I realize it was litigation over whether that was right or not. He could have kept it there, but under that permit it's subject to movement if necessary. And that's something he was unwilling to do. That's why the county commenced the action for removal of the fence. He counterclaimed for inverse condemnation. That's how this all arose. My position is he could have made this claim in state court. He did not do so, and I don't think he can place the blame on the county or others for that fact. That's my primary thought. Is there any reason to think the state court would have had a different assessment of the reasonableness of the $110,000? I don't think so, Your Honor. I think if you look at the pertinent definitions regarding litigation expenses, attorney's fees, appraisal fees, things of that nature, they're very similar in Wisconsin law to what we have in federal law. Also, Wisconsin follows the lodestar analysis when it comes to determining reasonable attorney's fees. That's precisely the analysis followed by the federal courts and many other state courts. Wisconsin took on, so to speak, that law. It follows that law. I don't think a federal court would do anything different from what the state court did here in terms of looking to and analyzing what is reasonable. I often get the impression looking at Mr. DeCoster's briefs that he thinks that he's entitled to not just reasonable fees but all of his actual fees. His complaint is, I didn't get all my money. Right. I mean, clearly he didn't. There's no doubt about that. I thought Wisconsin on the issue preclusion side did have a safety valve if somebody didn't have a full and fair opportunity to litigate a particular issue, you wouldn't be bound. I think that is in there, Your Honor, but it does, as you indicate, accept the so-called transactional approach in determining whether or not an issue should have been brought to the attention of the court. Well, that's on the claim preclusion side, yeah. But on the issue, sometimes there's a little more flexibility on issue preclusion because of different courts or different opportunities to raise a point. I do think the issue of the reasonableness of the expenses is as close as it could possibly be. It's the same expenses. It's the same dispute. It's the same everything. But there are some states that give people a little bit of a safety valve on issue preclusion if there was no full and fair opportunity to litigate the first time around. I think there was fair opportunity here. And, again, there's nothing esoteric involved because the Wisconsin statutes themselves alert litigants and their attorneys to the fact that the uniform relocation act. No, they actually mention it. Oh, they do, yes, specifically. I think that was required. I think the act was an effort on the part of the federal government to assure that states which did not have provisions providing for benefits in relocation circumstances or for attorney's fees and costs gave those benefits to condemnees as a condition of being able to obtain federal financial assistance. That, I think, was the purpose of the law. I think the legislative history backs that up. We don't have this here. Wisconsin, I think, provides the full panoply of rights that the federal act looks to and requires. So I really think a federal court would be doing the same thing the state court did in this situation. I also think the great bulk of the law is to the effect that there is no private right of action under the Uniform Act. Sometimes courts have held that the only remedy for appeal is the Administrative Procedure Act. Sometimes they've held that there simply is no private right at all, specifically with respect to Section 1983. It seems to me that since the Supreme Court's Gonzaga case, everyone agrees that the Uniform Act here contains no language unambiguously indicating that there is a private right of action which, according to that case, is needed for Section 1983 to be used as an enforcement remedy. My fear about acceptance of the appellant's position here is that this will render the Uniform Act into a vehicle by which disgruntled litigants in state court can essentially make the same claim on the same or similar grounds for review by the federal courts. This is why I also think the Rooker-Feldman Doctrine applies here because it makes the federal court basically an appellate court for purposes of a state court decision. The district court did not get into that. It held that the claim was precluded. If you'll explain, did the condemnation took land and the fence on it? It required the removal of the fence. It didn't take the fence. It did not take the land. It did take the land. It did take the land. Yeah, right. A strip of land. In other words, it's like an improvement on the land in effect. Well, I think the fence would be deemed a fixture under Wisconsin law because, as Mr. DeCoster acknowledges, it was there for many years. It was part of the condemnation, however. Again, the county never admitted to a taking, and there was no finding that a taking had taken place. I understand the county's position was that this fence was on land  Within the right of way. We have a preexisting right to say we don't want the fence here. Right. The idea behind the stipulation, I was involved in the trial court proceedings, was it was an effort to eliminate the need to determine whether or not a taking had occurred. The county insisted there had been none. By stipulation, that was acknowledged by Mr. DeCoster, and the parties agreed that the sole issue to be determined by the court was going to be litigation expenses awardable under section 32.28, which I maintain is the equivalent to litigation expenses as allowed under the Uniform Act. But the easement exists regardless of who owns the land. Well, there still would be a right of way, but the county now does own a stretch of land. For which Mr. DeCoster has been compensated. For which he was compensated, yes. And compensated outside of the stipulation. That wasn't part of the determination made by the state court. It wasn't looking to the amount of fair compensation for the property. And I think, as I recall, survey fees, et cetera, were paid, too, outside of the stipulation. The stipulation was solely addressed to litigation expenses, and the parties, by its terms, agreed that the state court would make that determination. Often the briefs of the appellant here say that the county refused to grant him his rights to litigation expenses. The county never agreed that it would accept, without question, everything he claimed for attorney's fees or other litigation expenses. As the law indicates, it's a reasonableness determination, and that's a determination made by the court, not by the county. That's another reason why I think Worker Feldman would apply here. But the district court didn't feel it was necessary to address that. Well, if you have nothing further to say, you may sit down if you'd like. Thank you very much. I'm not trying to shut you off. I think if I had anything else to say, it would probably be repetitious. All right. Thank you very much, then. Anything further, Mr. DeLosto? Just briefly, Ron. In response to some comments of Mr. Bruce, again, who was on the scene at the time of the trial, unlike myself, the status of whether Mr. DeCoster was a displaced person or not is not a requirement, and I've cited the Bonanza case in our briefs on that issue. The URA says he would be able to get reasonable fees. Judge Panning, you asked, did the condemnation take land, and as was indicated, quick claim deeds were given in exchange for some funds for the land and the right-of-way, as well as some ditch improvements that occurred afterwards. Judge Wood asked about would there be any reasonable chance the court may have awarded more, whether that had the URA been before the state court or before the federal court had we not been knocked out on summary judgment, and my answer would be yes, because the state court, for, I think, reasons that did not at all consider the congressional intent in the URA, because it wasn't brought up before it, did not attempt to make Mr. DeCoster whole. He was not the one that had a ferocious litigation leading up to $100,000 or $140,000 in fees by the Madison law firm who represented him. But that happened, and that sometimes does, and he was asking for reasonable compensation so that he would have those expenses and fees paid for, and clearly a three-quarter cut does not apply in the Lodestar calculus, I think, that was done by the state court. I would say with discretion under the state law, but I think that discretion would have been much more limited given the congressional intent had the URA been before him. And finally, Your Honor, Judge Wood mentioned about the full and fair opportunity to litigate the issue. Was there an opportunity? Theoretically, yes. It was never brought up by counsel, so it did not happen. It was not waived in the settlement agreement, but I think the Jones case that I discussed in my reply brief can talk about a due process problem, and given that little wiggle room of possibly getting back, it is not the position of Mr. DeCosta that he wants double compensation or more, a windfall or more than he should get. It is not his position that we're asking the court to undo Gonzaga and open up. We can't do that anyway. You can't do that anyway, all right. But under Gonzaga and under the cases that have applied, the URA unambiguously creates a right, a mandatory right to a specific group, which is property owners to be made whole or have reasonable fees and costs reimbursed, and the URA does not contain any kind of enforcement mechanism that's intended by Congress to be exclusive. There is no enforcement mechanism for a state or local project that has federal funding going in if the URA rights are not accorded, other than a private right of action under the URA or 1983 itself or both as we did here. So we respectfully ask the court to allow a sliver of an opportunity for Mr. DeCosta to go back before the district court and prove up his right to fees that should have been awarded in the first place. Thank you. All right, thank you very much. Thanks to both counsel. We'll take the case under advisement.